**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2080-24

HOWARD BERNSTEIN,
on behalf of himself and
all others similarly situated,

     Plaintiff-Appellant,

v.

BRISTOL-MYERS SQUIBB CO.,
MARK J. ALLES, GIOVANNI
CAFORIO, M.D., SANDRA
LEUNG, CHARLES
BANCROFT, KAREN M.
SANTIAGO, VICKI L. SATO,
PH.D., PETER J. ARDUINI,
ROBERT BERTOLINI, MATTHEW
W. EMMENS, MICHAEL
GROBSTEIN, ALAN J. LACY,
DINESH C. PALIWAL,
THEODORE R. SAMUELS,
GERALD L. STORCH, and KAREN
H. VOUSDEN, PH.D.,

     Defendants-Respondents.

_____

Argued May 12, 2026 – Decided August 4, 2026

Before Judges Sumners, Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3887-21.

Audra DePaolo and Thomas L. Laughlin, IV (Scott & Scott) of the New York bar, admitted pro hac vice, argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knoph, Thomas L. Laughlin IV, and David W. Hall (The Hall Firm, Ltd.) of the California bar, admitted pro hac vice, attorneys; Audra DePaolo, Thomas L. Laughlin, IV, and David W. Hall, on the briefs).

Kevin G. Walsh argued the cause for respondents Bristol-Myers Squibb Company, Peter J. Arduini, Charles Bancroft, Robert Bertolini, Giovanni Caforio, Matthew W. Emmens, Michael Grobstein, Alan J. Lacy, Sandra Leung, Dinesh C. Paliwal, Theodore R. Samuels, Karen M. Santiago, Vicki L. Sato, Gerald L. Storch, and Karen H. Vousden (Greenburg Traruig, LLP, attorneys; Kevin G. Walsh, John J. Clarke, Jr. (DLA Piper LLP (US)) of the New York bar, admitted pro hac vice, and Steven M. Rosato (DLA Piper LLP (US)) of the New York bar, admitted pro hac vice, of counsel and on the briefs).

Jennifer L. Del Medico (Jones Day) argued the cause for respondent Mark J. Alles (Jennifer L. Del Medico, attorney; Jennifer L. Del Medico, of counsel and on the briefs; John C. Tang (Jones Day) of the New York bar, admitted pro hac vice, on the briefs).

PER CURIAM

This appeal arises from the merger of defendant Bristol-Myers Squibb (BMS) and Celgene Corporation in 2019. Plaintiff, Howard Bernstein, claims that BMS violated the Securities Act of 1933 (Securities Act) with respect to

2

contingent value rights (CVRs)[1] and stock issued by BMS as part of the merger. The CVRs at issue were conditioned upon the U.S. Food and Drug Administration (FDA) approving applications for three cancer drugs by specific milestone dates. If any of the deadlines were missed, the CVRs would expire and have no value. The FDA approved all but one application within the deadline. The application for approval of liso-cel—a cutting-edge cancer therapy drug—was approved thirty-six days too late for CVR holders to receive payment. Plaintiff, acting on behalf of himself and other similarly situated acquirors of the CVRs and shares of common BMS stock, alleges that BMS violated disclosure requirements by failing to inform investors that, prior to the merger, BMS was drafting regulatory filings and operational plans that diverged from industry practice and FDA guidance, which, plaintiff alleges, would "slow roll" the FDA drug approval process. The gravamen of plaintiff's complaint is that the value of BMS common stock and CVRs declined substantially due to defendants' undisclosed manipulations with respect to the FDA approval process for liso-cel.

---

[1] A CVR is "[a]n entitlement granted to the shareholders of an acquired company (or of a company undergoing major restructuring) whereby the shareholders are to receive an additional benefit if a specified event occurs." Black's Law Dictionary (12th ed. 2024).

A-2080-24

It bears noting at the outset that while plaintiff's original complaint alleged a fraudulent scheme, his amended complaint is based on a "pure omission" theory—that defendants failed to disclose to investors that their draft FDA documents would slow-roll the approval process. The amended complaint "expressly excludes and disclaims any allegation that could be construed as alleging fraud or fraudulent intent." Plaintiff's revision was made for strategic reasons relating to the different pleading standards for claims that allege fraud versus claims that allege strict liability.

Plaintiff appeals the February 7, 2025, Law Division order entered by Judge John G. Hudak dismissing the amended complaint with prejudice pursuant to Rule 4:6-2(e) for failure to state a claim. After reviewing the record in light of the governing legal principles, we affirm substantially for the reasons set forth in Judge Hudak's thorough written opinion.

I.

We discern the following pertinent facts and procedural history from the record.

BMS/Celgene Merger

In 2019 Celgene was acquired by and merged into BMS in accordance with a merger agreement. Pursuant to that agreement, and subject to the

approval of shareholders of both companies, Celgene shareholders would receive shares of BMS common stock, cash, and CVRs. BMS agreed to pay each CVR holder $9 in cash if the FDA approved applications for three Celgene products that were in development, provided that the drugs were approved by the FDA by specified milestone dates. Relevantly, for CVR holders to receive payment related to the cancer therapy drug liso-cel, the FDA would need to approve the liso-cel application by December 31, 2020.

On February 1, 2019, defendants filed a Form S-4 registration statement with the U.S. Securities and Exchange Commission (SEC). On February 22, 2019, BMS and Celgene filed a joint proxy statement/prospectus seeking approval from their respective shareholders for the proposed transaction. The joint proxy statement/prospectus forms part of the registration statement. The SEC declared the registration statement to be effective on February 22, 2019.

The section of the registration statement entitled "Description of the CVRs—Milestone Payment," provides in pertinent part:

> Each holder of a CVR is entitled to receive $9.00 per CVR, which is referred to in this joint proxy statement/prospectus as the milestone payment, if the CVR milestone is achieved. CVR milestone in this joint proxy statement/prospectus means the satisfaction of all (but not less than all) of the following: (i) the bb2121 milestone has occurred on or prior to March 31, 2021; (ii) the [liso-cel] milestone has occurred on or

A-2080-24

prior to December 31, 2020; and (iii) the Ozanimod milestone has occurred on or prior to December 31, 2020.

Pursuant to the registration statement, BMS agreed to use "'diligent efforts' to achieve the CVR milestone."

The registration statement also included a provision entitled "Risks Related to the CVRs," which stated:

> You may not receive any payment on the CVRs. Your right to receive any future payment on the CVRs will be contingent upon the achievement of certain agreed upon U.S. regulatory milestones within the time periods specified in the CVR agreement. If the CVR milestone, as defined in the section titled "Description[] of the CVRs—Milestone Payment" . . . is not achieved for any reason within the time periods specified in the CVR agreement, no payment will be made under the CVRs, and the CVRs will expire valueless. Accordingly, the value, if any, of the CVRs is speculative, and the CVRs may ultimately have no value.

### Post-Merger Events

The merger became effective on November 20, 2019, at which point BMS issued the CVRs. Plaintiff was a Celgene stockholder and received the consideration provided for by the agreement. On December 18, 2019, BMS assumed control of the FDA approval of liso-cel and submitted the final portion

6

of the Biologics License Application (BLA)[2] to the FDA. The FDA completed its initial review of the liso-cel BLA on February 13, 2020, and granted "Priority Review" status, with an expected review completion date of August 17, 2020. However, the FDA subsequently identified significant omissions in the application, specifically in the CMC[3] section submitted on December 18, 2019. BMS omitted required data on product assays and assay validation,[4] which are routinely included in BLAs and necessary for FDA evaluation. On March 23, 2020, the FDA requested an amendment to the BLA seeking the missing data on assays and validation. On April 15, 2020, BMS submitted the requested amendment.

Additionally, two manufacturing facilities were designated for liso-cel production and were required to be inspected by the FDA prior to approval of

---

[2]  A Biologics License Application (BLA) submission is a formal request to the FDA for permission to market a biological product.

[3]  CMC refers to the "Chemistry, Manufacturing and Controls" section of the BLA application and specifies the manufacturing processes, product characteristics, and product testing upon which the manufacturer relies to ensure that its therapy is safe, effective, and consistently manufactured.

[4] Product assays are laboratory procedures used to analyze, measure, or quantify the amount or activity of a specific target entity (e.g., a drug molecule or protein). Assay validation is the structured process of proving that these assays are reliable, accurate, and consistent for their intended purpose, ensuring compliance with regulatory standards.

A-2080-24

the application. The inspections occurred in October 2020 and December 2020, shortly before the December 31, 2020 milestone. Both parties acknowledge that the Covid-19 pandemic resulted in delays to FDA inspection of manufacturing sites. The inspections were completed and the FDA noted several issues with each facility. BMS responded to the FDA's observations on November 5, 2020, and December 18, 2020.

On January 1, 2021, BMS stated that "[b]ecause the milestone of approval of [l]iso-cel by December 31, 2020, was not met, the CVR Agreement has automatically terminated in accordance with its terms, the security will no longer trade on the [New York Stock Exchange], and the CVRs are no longer eligible for payment." On February 5, 2021, the FDA approved liso-cel, thirty-six days after the milestone date.

Plaintiff's Initial and Amended Complaints

On November 12, 2021, plaintiff filed his original complaint against BMS, several current and/or former BMS directors and officers, and Mark J. Alles, Celgene's Chairman and Chief executive Officer prior to the closing of its merger with BMS. The complaint asserted claims under sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, against all defendants.

On June 25, 2024, Judge Hudak granted defendants' motion to dismiss the complaint without prejudice, finding: (1) the statements made by BMS regarding the achievement of the CVR milestones were protected by the safe harbor for forward-looking statements provided by the Private Securities Litigation Reform Act (PSLRA) and therefore were not actionable under Sections 11 or 12(a)(2) of the Securities Act; (2) BMS did not make any actionable misstatements and plaintiff's allegations were legally deficient allegations of fraud by hindsight; and (3) the complaint did not plead any facts that show there was a plan in place prior to the offering materials becoming effective because BMS disclosed that it was possible the CVRs could become worthless. The trial judge also dismissed plaintiff's pure omissions theory under Items 303 and 105[5] and dismissed the Section 15 claim. Further, the judge held that plaintiff failed to satisfy the heightened Rule 4:5-8 pleading standards for

---

[5] Item 303, 17 C.F.R. § 229.303 (Management's Discussion and Analysis, MD&A) and Item 105, 17 C.F.R. § 229.105 (Risk Factors) of SEC Regulation S-K require public companies to disclose material information regarding financial performance and risks. Item 303 mandates analysis of financial trends, liquidity, capital resources, and known uncertainties, while Item 105 demands concise, tailored disclosure of material risks. See Rosner, Turner, O'Garrow & Simkins, SEC Adopts Amendments to Regulation S-K, Reinforcing a Principles-Based Disclosure Regime, Holland & Knight (Sept. 23, 2020), https://www.hklaw.com/en/insights/publications/2020/09/sec-adopts-amendments-to-regulation-sk.

actions that sound in fraud. Judge Hudak granted plaintiff "an opportunity to amend his complaint to allege facts that support his claims," and reiterated that "[a]ny allegations of fraud must be pled with particularity as required by [Rule] 4:5-8."

Plaintiff filed an amended complaint on August 15, 2024. The amended complaint omitted the previously asserted Section 12(a)(2) claim and asserted claims only under Sections 11 and 15 of the Securities Act.

In the factual section of his amended complaint, plaintiff reasserted his claim that defendants violated Items 303 and 105 of SEC Regulation S-K by failing to disclose necessary information. Specifically, the amended complaint asserts claims against all defendants under Section 11 of the Securities Act, which authorizes private suits arising out of alleged material misstatements or omissions in registration statements. Plaintiff also asserts a "controlling person" claim against all individual defendants under Section 15 of the Securities Act, which holds individuals or entities jointly and severally liable for securities violations (under Sections 11 or 12) committed by someone they control, such as a company or subordinate.

Plaintiff sought to assert these claims on behalf of two putative classes: (1) all persons who received BMS common stock in exchange for Celgene

A-2080-24

securities in connection with the Celgene merger; and (2) all persons who acquired CVRs pursuant to the February 1, 2019, registration statement. Plaintiff alleges the registration statement was misleading because it did not disclose the purportedly deficient regulatory filings and plans necessary for FDA approval. Plaintiff maintains that BMS was required to make those disclosures under Items 303 and 105 of Regulation S-K, 17 C.F.R. §§ 229.105, 229.303.

Motion to Dismiss with Prejudice

On September 30, 2024, defendants filed a motion to dismiss the amended complaint pursuant to Rule 4:6-2(e) for failure to state a claim. Oral argument was held on January 10, 2025.

On February 7, 2025, Judge Hudak granted defendants' motion dismissing plaintiff's complaint in its entirety, with prejudice. The order was accompanied by a twenty-six-page written decision. The judge enumerated several reasons why plaintiff's complaint failed to state a claim for relief. To begin, the judge explained that although plaintiff alleged strict liability negligence, the gravamen of the complaint sounded in fraud and was thus subject to a heightened pleading standard under Rule 4:5-8. The judge further reasoned that even if Rule 4:5-8 did not apply, and all reasonable inferences were given to plaintiff, BMS could

not have known that any FDA filings were deficient because they were not in existence at the time the registration statement became effective. The judge explained, "Drafts do not constitute the final filing, which occurred 10 months after the registration statement became effective." The judge further found that BMS could not have been negligent in failing to warn investors about deficient filings in the registration statement, because any problems were discovered when BMS filed its application with the FDA ten months later. The judge explained that "[i]n short, [p]laintiff is using hindsight to assert BMS was either intentionally submitting deficient filings or was negligent in doing so."

Additionally, Judge Hudak concluded that any statements made by BMS regarding the CVR milestones were protected by the safe harbor for forward-looking statements under the PSLRA, which "bars liability claims based on any forward-looking statement that is 'accompanied by meaningful cautionary language,' or made without 'actual knowledge that it was false or misleading.'" (Quoting 15 U.S.C. § 77z-2(c)(1)). Accordingly, the judge concluded that the statement was protected and plaintiff could not assert a Section 11 claim.

Next, Judge Hudak determined that, even if the safe harbor did not apply, plaintiff's claims pursuant to Item 303 and 105 still failed for several reasons. First, with respect to Item 303, which mandates analysis of known financial

12

trends or uncertainties, the judge concluded that BMS did not know that its filings were deficient without notification from the FDA, which was not sent until March 23, 2020, "a little more than a year after the registration statement became effective." Again, the judge concluded that plaintiff was impermissibly using hindsight to allege some financial trend or known uncertainty existed at the time the registration statement was sent to investors. Additionally, the judge determined that even if BMS had actual knowledge that the FDA applications and plans were deficient, it adequately warned investors of such risks and the possibility that the CVR would not meet its milestone.

As for Item 105, which requires disclosure of material risks, Judge Hudak explained, citing <u>Wandel v. Gao</u>, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022), that "to state a claim under Item 105, an issuer must know, at the time the registration statement becomes effective, about an undisclosed risk factor that could seriously affect its present or future business." The judge concluded that the facts of the complaint show that the FDA filings were not in existence at the time the registration statement became effective—February 22, 2019. Thus, the judge reasoned, any risks could only have become known once the filings and plans were submitted to the FDA, which occurred "well after the registration

13

statement became effective." Accordingly, the judge concluded that plaintiff failed to state a claim for violation of SEC Items 303 and 105.

Turning to plaintiff's Section 15 allegations, Judge Hudak explained that Section 15 creates liability for individuals or entities that control any person liable under Section 11; thus, "the success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under section 11." Because plaintiff failed to plead a Section 11 claim, any claims under Section 15 likewise failed. The judge also found that plaintiff alleged no facts showing that defendant Alles directed the activities of BMS or had any control over the issuance of the CVRs.

Finally, Judge Hudak determined that dismissal with prejudice was warranted because "granting any further amendment would be futile and useless" considering plaintiff's two failed complaints. The judge noted that plaintiff's theories of liability had been rejected by the Second Circuit and the New York Supreme Court and concluded that "there is no other discernable theory of liability [p]laintiff can make under the Securities Act." Accordingly, plaintiff's complaint was dismissed in its entirety with prejudice.

Plaintiff raises the following contentions for our consideration:

A-2080-24

POINT I

PLAINTIFF'S ALLEGATIONS SUFFICE TO PLEAD PURE OMISSION CAUSES OF ACTION UNDER SECTION 11.

      A.    Plaintiff Has Adequately Pled a Violation of Item 303.

      B.    Plaintiff Has Adequately Pled a Violation of Item 105.

      C.    The PSLRA Safe-Harbor Does Not Apply to Items 303 and105.

POINT II

PLAINTIFF PLEADS SECTION 15 CONTROL LIABILITY AGAINST ALL DEFENDANTS.

Plaintiff raises the following additional contentions in his reply brief:

A. Defendants Distort the Rules of Pleading

B. Plaintiff's Detailed Factual Allegations State Section 11 Claims Premised On Pure Omission, Not Misstatement

C. Plaintiff Adequately Pled Section 15 Control Claims

II.

We first address plaintiff's contention that his amended complaint sufficiently pleads that defendants violated their affirmative duties to disclose information pursuant to Items 303 and 105. Plaintiff contends defendants failed to disclose that, prior to the Celgene merger, BMS was already drafting FDA application documentation, approval plans, and operational protocols that were

15

"inconsistent with well-established industry standards, FDA requirements, and even [BMS's] own past practice" that would delay the approval of liso-cel. Plaintiff maintains that these allegations, "taken as true with all inferences drawn" in his favor are sufficient to plead violations of Items 303 and 105 and to establish a Section 11 claim. Defendants respond that plaintiff has failed to identify any requisite undisclosed material fact that existed when the registration statement became effective, justifying dismissal of the complaint.

We begin our analysis by acknowledging the legal principles governing this appeal. "Appellate courts review orders granting motions to dismiss for failure to state a claim under a de novo standard." State ex rel. Health Choice Grp., LLC v. Bayer Corp., 478 N.J. Super. 184, 194 (App. Div. 2024) (citing Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021)). "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin, 246 N.J. at 171 (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)). "The complaint must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid.

(quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).  "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107).

"Dismissals under Rule 4:6-2(e) are ordinarily without prejudice."  Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 225 (App. Div. 2024) (quoting Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022)).  "However, there are times when a dismissal with prejudice is mandated, such as when the facts are palpably insufficient to support a claim upon which relief can be granted and when discovery will not give rise to a successful claim."  Id. at 225-26 (internal quotation marks and citations omitted).

Turning to substantive legal principles relevant to this appeal, we note that "[t]he primary innovation of the [Securities] Act was the creation of federal duties—for the most part, registration and disclosure obligations—in connection with public offerings." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269 (3d. Cir. 2006) (second alteration in original) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 571 (1995)).  "Section 11 of the Securities Act, 15 U.S.C. § 77k, creates a private cause of action in cases in which a registration statement

either contains an untrue statement of material fact or omits a material fact that is required or necessary to make the other statements therein not misleading." Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 342 (3d Cir. 1999). "Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 179 (2015). "Either way, the buyer need not prove (as [they] must to establish certain other securities offenses) that the defendant acted with any intent to deceive or defraud." Ibid. (citing Herman & MacLean v. Huddleston, 459 U.S. 375, 381-382 (1983)).

Furthermore, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [act]." In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 369 (3d Cir. 1993) (alterations in original) (quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). "Materiality is traditionally a question for the trier of fact." Klein, 186 F.3d at 342. "However, if the alleged 'omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality,' the court may rule them immaterial as a matter of law." Ibid. (quoting Weiner v. Quaker Oats Co., 129 F.3d 310,

A-2080-24

317 (3d Cir. 1997)).  "[A] court must appraise a misrepresentation or omission in the complete context in which the author conveys it."  Taj Mahal Litig., 7 F.3d at 369.

As we have already noted, "Section 11 is a 'virtually absolute liability provision[ ], which do[es] not require plaintiffs to allege that defendants possessed any scienter.'"  In re Suprema, 438 F.3d at 269 (second and third alterations in original) (quoting In re Adams Golf Inc. Securities Litigation, 381 F.3d 267, 274 n.7 (3d Cir. 2004)).  "If a plaintiff purchased a security issued pursuant to a registration statement, [they] need only show a material misstatement or omission to establish [their] prima facie case."  Ibid. (quoting Huddleston, 459 U.S. at 382).

While fraud "is not a necessary element to establish a prima facie claim under Section 11," the law provides that "where the plaintiff grounds these Securities Act claims in allegations of fraud," heightened pleading requirements apply.  Id. at 270.  In contrast, where a plaintiff's Section 11 claim is not based on fraud but rather on strict negligence, liberal notice pleading requirements apply.  See ibid.

Liberal notice pleading affords the non-movant "'every reasonable inference of fact,' and [requires] searching the complaint 'in depth and with

liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Am. Civ. Liberties Union of New Jersey v. Cnty. Prosecutors Ass'n of New Jersey, 257 N.J. 87, 100 (2024) (quoting Printing Mart-Morristown, 116 N.J. at 746). In contrast, the heightened pleading requirement of Fed. R. Civ. P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The federal rule's state counterpart, Rule 4:5-8(a), requires that fraud be pled by stating the "particulars of the wrong, with dates and items if necessary" where practicable. "The question of whether the heightened pleading standard articulated in Rule 9(b) applies to claims brought under [S]ection 11 . . . that sound in fraud is a question of law subject to plenary review." California Pub. Employees' Ret. Sys. v. Chubb Corp. (CALPERS), 394 F.3d 126, 160 (3d Cir. 2004).

When determining whether a complaint alleges fraud, courts closely examine the language and allegations presented. See, e.g., ibid. (conducting an examination of the factual allegations in the complaint and concluding that plaintiffs' claims were "indisputably immersed in unparticularized allegations of fraud"). In Suprema, the Third Circuit made clear that where a complaint alleges separate claims under the Securities Act, the fraud allegations will not

"contaminate" the Section 11 negligence claims if pled separately. 438 F.3d at 272-73. The Suprema court reasoned that "[a] contrary result would effectively preclude plaintiffs from filing suit under Section 11 and Section 12(a)(2) as well as Section 10(b)(5)." Id. at 273.

In Rombach v. Chang, the Second Circuit rejected the plaintiff's assertion that his complaint did not "sound in fraud." 355 F.3d 164, 172 (2d Cir. 2004). The court concluded that in that instance, "the wording and imputations of the complaint [we]re classically associated with fraud: that the [r]egistration statement was 'inaccurate and misleading;' that it contained 'untrue statements of material facts;' and that 'materially false and misleading written statements' were issued." Ibid. (emphasis omitted). Importantly for purposes of the matter before us, the law is well-settled that a party cannot evade the heightened pleading standard by artful labeling where the substance of the complaint sounds in fraud. See In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) ("[Plaintiff] argues that it specifically disclaimed any allegations of fraud with respect to its Section 11 claims. These nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims . . . .").

A-2080-24

We next apply these general principles to the matter before us. Plaintiff's amended complaint purports to "expressly exclude[] and disclaim[] any allegation that could be construed as alleging fraud or fraudulent intent," and instead explains that plaintiff's "cause of action is solely based on claims of strict liability and/or negligence under the Securities Act." The allegations in the amended complaint, however, contradict that disclaimer, suggesting that plaintiff is attempting to camouflage a wolf—alleged fraud—in sheep's clothing in the form of a strict liability theory.

The facts of the complaint allege that BMS failed to disclose to investors that prior to the merger, BMS was already in the process of drafting deficient FDA applications and plans. Plaintiff argues that these omissions "evince inexcusable negligence." But they also evince a stratagem to deceive. Despite the label plaintiff strategically used to characterize the nature of his cause of action as strict liability rather than fraud, the allegations in the complaint contain assertions "classically associated with fraud." See In re Stac Elecs., 89 F.3d at 1405 n.2. For example, the crux of plaintiff's complaint alleges,

> [d]efendants violated Items 303 and 105 by failing to disclose that, before the Merger, [BMS] was already drafting deficient regulatory filings and operational plans that diverged from industry practice (as well as [BMS' own] prior experience) and contravened ongoing FDA guidance, and these already occurring (yet

22

undisclosed) known events and uncertainties were likely to slow-roll the FDA approval process for a new therapy, liso-cel, and thus undercut the prospect of a $6.4 billion CVR payment promised to [p]laintiff and other former Celgene investors.

We agree with Judge Hudak that the gravamen of plaintiff's complaint "sounds in fraud" because it asserts that defendants knowingly withheld material information. Applying de novo review, we hold that plaintiff does not sufficiently explain how defendants could have known the materials were inadequate prior to submission to the FDA unless they intentionally misled investors about the true risks associated with the merger—a hallmark of fraudulent conduct. As the judge aptly noted, "[y]ou can't plan to be negligent," and "[t]he logical conclusion of these allegations is that BMS was committing fraud in order to avoid making the CVR payment."

Moreover, unlike the situation in Suprema, plaintiff's complaint does not contain both fraud and non-fraud allegations; thus, the concerns expressed by the Third Circuit are not present here. In sum, the judge did not err in concluding that a heightened pleading standard was required.

Plaintiff cannot meet that heightened standard because the amended complaint fails to state with particularity how the fraud was conceived and includes no details, aside from general dates of meetings conducted during the

merger process. Furthermore, the complaint does not set forth specific allegations explaining who, if anyone, became aware that the FDA filings were deficient or when they became aware of any such deficiency. In sum, the heightened pleading standard applies, and plaintiff cannot meet this requirement.

III.

We next address plaintiff's contention that the amended complaint should not have been dismissed because it adequately pleads violations of Items 303 and 105. Specifically, plaintiff contends that the registration statement failed to disclose BMS's internal pre-merger draft plans and FDA applications that were deficient and would increase the risk of rendering the CVR worthless. Plaintiff also argues that Judge Hudak erred in distinguishing draft plans from ultimate filings and further erred in finding that BMS could not know about any issues in these documents until it was notified by the FDA of deficiencies.

Defendants respond that plaintiff's complaint impermissibly relies on "hindsight" pleading, and even accepting plaintiff's allegations as true, "Item 303 only requires disclosure of a <u>known</u> trend, commitment, event or uncertainty" (internal quotation marks and citations omitted). Defendants further argue that plaintiff offers no allegations that at the time the registration

A-2080-24

statement became effective, "it was reasonably likely that the liso-cel CVR milestone would be missed" because of the draft documents. Defendants also contend that plaintiff's Item 105 theory likewise fails for substantially the same reason—there are no allegations in the complaint that BMS knew at the time of the offering that the draft filings were so deficient as to affect the liso-cel milestone.

We conclude that even applying a more liberal pleading standard and giving all reasonable inferences to plaintiff, the complaint was properly dismissed because plaintiff fails to sufficiently plead violations of SEC regulation Items 303 and 105. 17 C.F.R. §§ 229.303, 229.105. Specifically, plaintiff fails to sufficiently plead that defendants were aware of the alleged uncertainty or risk, or that any alleged uncertainty or risk was material, necessitating disclosure.

Item 303 requires disclosure of "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303. To adequately plead a failure-to-disclose claim, "a complaint must allege (1) that a registrant knew about an uncertainty before an offering; (2) that the known uncertainty is 'reasonably likely to have material effects on

25

the registrant's financial condition or results of operation'; and (3) that the offering documents failed to disclose the known uncertainty." Silverstrand Invs. v. AMAG Pharms., Inc., 707 F.3d 95, 103 (1st Cir. 2013) (internal quotation marks and citations omitted). See also Jiajia Luo v. Sogou, Inc., 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020) (explaining that the SEC has characterized Item 303 to mean that "a disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operations." (quoting Management's Discussion & Analysis of Fin. Condition & Results of Operations, Release No. 6835 (May 18, 1989))).

Item 105 directs issuers to:

> [w]here appropriate, provide under the caption "Risk Factors" a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky. This discussion must be concise and organized logically. Do not present risks that could apply generically to any registrant or any offering. Explain how the risk affects the registrant or the securities being offered. Set forth each risk factor under a sub[-]caption that adequately describes the risk.
>
> [17 C.F.R. § 229.105.]

"While 'regulations can sometimes make the eyes glaze over,' readers easily understand Item 105 to require issuers to disclose the most significant

A-2080-24

factors known to make an investment speculative or risky." Jaroslawicz v. M&T Bank Corp., 962 F.3d 701, 711 (3d Cir. 2020) (quoting Kisor v. Wilkie, 588 U.S. 558, 575 (2019)). To survive dismissal, a complaint alleging Item 105 omissions must allege facts supporting an inference that the registrant knew, at the time of the offering, "that (1) a risk factor existed; (2) the risk factor could adversely [a]ffect the registrant's present or future business expectations; and (3) the offering documents failed to disclose the risk factor." Silverstrand, 707 F.3d at 103.

Plaintiff relies on Silverstrand for the proposition that omissions in the registration statement that could have led to FDA action are more than sufficient to support a Section 11 pure omissions claim based on undisclosed Item 303 uncertainties and Item 105 risks. See id. at 104. However, the circumstances in Silverstrand are distinguishable from the present situation. In Silverstrand, the defendants failed to disclose to investors twenty-three reports of "Serious Adverse Events" (SAEs) the company sent to the FDA after the drug came to market. Id. at 99. Two of those reports documented life-threatening anaphylactic reactions requiring hospitalization and fourteen of the remaining reports described hospitalizations due to anaphylaxis-related symptoms (including cardiac arrest, shortness of breath, reduced blood pressure, loss of

consciousness, hives, dizziness, or vomiting). The defendants further omitted a report that a seventy-year-old patient died following an injection of the drug—which the treating physician identified as the "primary suspect" for the fatality. Ibid. The common stocks were sold to the public bringing a substantial profit for the company; however, within weeks the market value of the company's shares significantly dropped as the adverse effects of the drug materialized. Ibid.

The Silverstrand court concluded that the allegations in the complaint supported a reasonable inference that before the offering, the defendant company knew the twenty-three SAEs—including a death and multiple anaphylactic reactions—could have triggered FDA scrutiny, particularly given that the drug had been previously denied for approval by the agency. Id. at 104. The facts in that case also suggested that any FDA intervention would likely have harmed the company by restricting its ability to market the drug and undercutting its revenue. Ibid. The Silverstrand court concluded that these inferences sufficiently supported a plausible omissions claim under Section 11 based on undisclosed risks and uncertainties. Ibid.

Here, plaintiff alleges that "the undisclosed substandard operational plans and regulatory filings [d]efendants were already drafting before the [m]erger"

constituted trends or uncertainties under Item 303 that were required to be disclosed. Plaintiff further alleges that the pre-merger drafts posed risks likely to delay FDA approval and jeopardize the $6.4 billion CVR payment, mandating disclosure under Item 105. As plaintiff explained at oral argument before the Law Division judge, his primary contention is that "[BMS] didn't disclose that their transition . . . plans . . . contain[ed] flaws." When asked by Judge Hudak what content needed to be disclosed, plaintiff responded: "The content was that . . . they were going to submit a truncated [l]iso-cel application that didn't contain the relevant underlying factual data that are typically submitted in these sort of FDA applications."

In contrast to the situation in Silverstrand, plaintiff's claims fail to allege that defendants possessed actual knowledge that the regulatory filings or operational plans were deficient at the time the registration statement became effective—February 22, 2019. While plaintiff is correct that he need not prove scienter for a Section 11 claim, see Omnicare, 575 U.S. at 179, he still must demonstrate that defendants were aware of the required disclosure. See Sodha v. Golubowski, 154 F.4th 1019, 1037 (9th Cir. 2025) ("For Item 303 to impose a duty to disclose, there must be a 'trend, demand, commitment, event or

uncertainty [that] is <u>known</u>.'" (alteration in original) (emphasis added) (quoting <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1297 (9th Cir. 1998))).

Plaintiff essentially argues that because BMS diverged from industry standards and past practice for submitting drug approval applications, defendants had to have known that the filings and plans would be rejected by the FDA.[6] He further argues that due diligence meetings were held by the two companies prior to the merger, and problems in the manufacturing sites would have been disclosed to BMS. Plaintiff's arguments fail because such conclusory statements, without more, do not show that defendants actually knew the filings or site plans were deficient or that the FDA would reject them when the registration statement became effective. The complaint reflects that the BLA and operation plans were not submitted to the FDA until December 2019 and the FDA sent their deficiency notification in March 2020. Plaintiff fails to provide any factual basis to form an inference that defendants knew these documents were deficient prior to the FDA notification. This is shown by the fact that the specific deficiencies identified by plaintiff in the amended complaint are the precise issues raised by the FDA in its deficiency notification

---

[6] We reiterate that the FDA application for liso-cel was ultimately approved; however, it was approved thirty-six days too late for CVR holders to receive payment.

A-2080-24

to BMS. That is a clear hallmark of hindsight pleading. Likewise, the alleged manufacturing site deficiencies are merely a recitation of FDA observations from inspections conducted in October and December 2020.

It bears emphasis that here, unlike the <u>Silverstrand</u> defendants—who failed to disclose to investors serious adverse events that the company had already reported to the FDA—plaintiff does not allege facts showing defendants were aware of the specific deficiencies before the FDA's notice, relying instead on hindsight speculation.

In sum, applying de novo review, we conclude that plaintiff fails to plead that defendants possessed the actual knowledge required for an Item 303 or 105 violation. We agree with Judge Hudak that permitting discovery on this issue would be futile because plaintiff already possesses the ultimate FDA application and is no longer asserting claims that defendants engaged in a conspiracy to submit deficient filings. In short, there is nothing more plaintiff can uncover to substantiate his omission theory given his purported abandonment of a fraud theory of liability.

IV.

We next address whether the amended complaint adequately alleges that any purported undisclosed uncertainty or risk was material to the company's

future business. "An omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [act]." Taj Mahal Litig., 7 F.3d at 369 (alterations in original) (quoting TSC Industries, 426 U.S. at 449). "[A] court must appraise a misrepresentation or omission in the complete context in which the author conveys it." Ibid.

Here, the registration statement disclosed there was only a forty-five percent chance that the FDA would approve all three applications in time to permit payment under the CVRs. In other words, the statement warned that there was less than a fifty-fifty chance that the CVRs would actually yield payment. We reiterate that the registration statement further advised:

> You may not receive any payment on the CVRs. Your right to receive any future payment on the CVRs will be contingent upon the achievement of certain agreed upon U.S. regulatory milestones within the time periods specified in the CVR agreement. If the CVR milestone, as defined in the section titled "Descriptions of the CVRs—Milestone Payment" . . . is not achieved for any reason within the time periods specified in the CVR agreement, no payment will be made under the CVRs, and the CVRs will expire valueless. Accordingly, the value, if any, of the CVRs is speculative, and the CVRs may ultimately have no value.

Viewing any alleged omission in the context of the entire registration statement, Taj Mahal Litig., 7 F.3d at 369, we hold that under the omission

32

theory plaintiff now relies on exclusively, the investors were adequately warned of the risks associated with the CVRs.

V.

Relatedly, defendants have consistently maintained that the challenged disclosures concerning the CVRs were protected as "forward-looking statements" under the PSLRA and are not actionable under Section 11. Thus, we next address plaintiff's contention that the statutory safe harbor for forward-looking statements does not apply to Items 303 and 105.

The PSLRA safe harbor "immunizes from liability any forward-looking statement, provided that: the statement is identified as such and accompanied by meaningful cautionary language; or is immaterial; or the plaintiff fails to show the statement was made with actual knowledge of its falsehood." Williams v. Globus Med., Inc., 869 F.3d 235, 245 (3d Cir. 2017) (quoting Institutional Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 254 (3d Cir. 2009)). Application of the safe harbor hinges on whether the statement is "forward-looking." The PSLRA provides:

> The term "forward-looking statement" means—
>
> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital

A-2080-24

expenditures, dividends, capital structure, or other financial items;

  (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

  (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

  (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

  (E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

  (F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

[15 U.S.C. § 77z-2.]

"Allegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor of the Securities Act." In re MobileMedia Sec. Litig., 28 F. Supp. 2d 901, 930 (D.N.J. 1998).

Plaintiff contends that the safe harbor does not apply to his claims under Items 303 and 105 because the amended complaint alleges that defendants omitted then-existing facts from the registration statement. See In re MobileMedia Sec. Litig., 28 F. Supp. 2d at 930. However, plaintiff's argument is undercut if not belied by the allegations contained in the amended complaint which demonstrate that the statement at issue was indeed forward-looking for purposes of safe harbor analysis. Specifically, plaintiff alleges:

> Defendants violated Items 303 and 105 by failing to disclose that, before the [m]erger, [BMS] was already drafting deficient regulatory filings and operational plans that diverged from industry practice (as well as [BMS' own] prior experience) and contravened ongoing FDA guidance, and these already occurring (yet undisclosed) known events and uncertainties were likely to slow-roll the FDA approval process for a new therapy, liso-cel, and thus undercut the prospect of a $6.4 billion CVR payment promised to [p]laintiff and other former Celgene investors.

These statements fall squarely within the PSLRA's definition of "forward-looking statements," as they involve (1) projections of future financial items (15 U.S.C. § 77z-2(i)(1)(A)); (2) statements of management's plans and objectives for future operations (§ 77z-2(i)(1)(B)); and (3) statements regarding future economic performance (§ 77z-2(i)(1)(C)). The alleged omissions relate to uncertainties and risks that could affect these future outcomes, not to

35

misstatements of historical fact. Accordingly, because the statements concern anticipated regulatory outcomes, they are forward-looking under the PSLRA, and the statutory safe harbor applies.

Furthermore, and importantly, for safe harbor immunity to apply, the forward-looking statement must be "accompanied by meaningful cautionary language." Williams, 869 F.3d at 245 (quoting Avaya, 564 F.3d at 254). "To qualify as 'meaningful,' cautionary language 'must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements.'" In re Sanofi Sec. Litig., 87 F. Supp. 3d 510, 530 (S.D.N.Y. 2015) (quoting Slayton v. Am. Exp. Co., 604 F.3d 758, 771 (2d Cir.2010)). For a plaintiff to demonstrate that cautionary language accompanied by a forward-looking statement was not meaningful, they must show that the language failed to expressly warn of or directly relate to the risk that ultimately caused their loss. See Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 359 (2d Cir. 2002) (explaining that plaintiffs may overcome a motion to dismiss by demonstrating "that the cautionary language did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss"). Here, as we noted in Section IV, the registration statement contained explicit cautionary language specific to the

A-2080-24

CVRs, warning investors that payment was not guaranteed and was dependent on achieving the agreed upon regulatory timeframes. The registration statement further warned that there was an expected forty-five percent chance BMS would meet the milestones for all three drugs. The cautionary language expressly advised investors that the CVRs may ultimately have no value—the risk that ultimately materialized and caused plaintiff's loss. See Halperin, 295 F.3d at 359.

In sum, we conclude that the safe harbor immunity applies to plaintiff's allegations and shields defendants from liability for the forward-looking statements relating to the CVRs.

VI.

We next address plaintiff's contention that the trial judge improperly dismissed the Section 15 claim for controlling person liability against defendant Alles—the former CEO and Chairman of the Board for Celgene. Plaintiff argues that Alles was personally involved in preparing and signing the registration statement and exercised control over Celgene and its employees in drafting the Offering Materials, making him directly responsible for the alleged misconduct underlying the claims in this case.

37

Section 15 of the Securities Act "penalizes persons who control a company that violates Sections 11 and 12." Golubowski, 154 F.4th at 1032 (citing 15 U.S.C. § 77o(a)). "[S]ection 15. . .require[s] [an] underlying primary violation[ ] of the securities laws." Ibid. (alternations in original) (quoting In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 886 (9th Cir. 2012)). To state a claim for controlling personal liability "plaintiff must prove: (1) a primary violation of federal securities laws . . . and (2) that the defendant exercised actual power or control over the primary violator." Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).

Here, plaintiff's controlling person claim fails to show a "primary violation of federal securities laws" and also fails to demonstrate that Alles exercised "actual power or control over the primary violator"—in this case BMS. Thus, applying de novo review, the judge's dismissal of the Section 15 claim was proper.

## VII.

Finally, we address whether it was appropriate for the trial judge to dismiss plaintiff's amended complaint with prejudice.[7] While "[d]ismissals

---

[7] Although not an issue initially raised in plaintiff's brief, defendants argue that Judge Hudak's dismissal of plaintiff's amended complaint with prejudice was

under <u>Rule</u> 4:6-2(e) are ordinarily without prejudice," there are situations where "a dismissal with prejudice is mandated," such as when the facts are "'palpably insufficient to support a claim upon which relief can be granted'" or when "'discovery will not give rise to'" a successful claim. <u>Mac Prop. Grp. LLC</u>, 473 N.J. Super. at 17 (first quoting <u>Rieder v. State</u>, 221 N.J. Super. 547, 552 (App. Div. 1987); and then quoting <u>Dimitrakopoulos</u>, 237 N.J. at 107).

In this instance, dismissal with prejudice was appropriate because the complaint contains no factual allegations supporting plaintiff's claims, and further discovery would not cure that deficiency. The amended complaint does not allege facts showing that defendants were aware of any uncertainty or risk, or that any such uncertainty or risk was material and required disclosure. Because plaintiff's pure omission disclosure claims rest entirely on the FDA's responses to defendants' submissions, additional discovery would not yield evidence of knowledge or materiality, unless plaintiff reverted to his original theory that defendants engaged in a fraudulent scheme to deprive investors of CVR payments.

---

appropriate because any further amendment would be "useless." Plaintiff responds that defendants misconstrue the pleading standards and that he should have been given an opportunity to further amend his complaint.

To the extent we have not specifically addressed them, any remaining contentions raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2080-24